John J. TENNISON, Petitioner,

v.

Ivalee HENRY, Respondent.

No. C–98–3842–CS(JCS).

United States District Court,
N.D. California.

Sept. 21, 2001.

John J. Tennison, Ione, CA, pro se.

Elliot R. Peters, Keker & Van Nest LLP, San Francisco, CA, for petitioner.

Ronald B. Bass, Joan Killeen, Peggy S. Ruffra, California Attorney General's Office, San Francisco, CA, for respondent.

## ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR DISCOVERY [Docket No. 37]

SPERO, United States Magistrate Judge.

Petitioner John J. Tennison's Motion For Discovery came on for hearing on Friday, July 27, 2001. For the reasons stated below, Petitioner's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

### A. Procedural History

Petitioner, John J. Tennison, was convicted of first-degree murder on October 8, 1990, and is currently serving a twenty-five-year to life sentence. Petition for Habeas Corpus at 1. On October 5, 1998, Tennison filed a Petition for Habeas Corpus in U.S. District Court asserting the following claims: 1) denial of due process based on "the refusal of the California courts to grant him a new trial based on compelling new evidence of innocence and his presentation of a confession by the actual killer;" 2) denial of due process based on "the refusal of the San Francisco City Attorney's Office to remedy this gross miscarriage of justice when Petitioner both proffered a confession from the actual killer and submitted mutually corroborating poly-graph results showing that he was not even present at the killing;" and 3) denial of Sixth Amendment right to effective assistance of counsel based on "counsel's overriding of Petitioner's right to testify." Petition for Habeas Corpus at 4–5.

The District Court held that Petitioner's claims were untimely and dismissed the Petition. The Ninth Circuit reversed the District Court's decision, finding that the Petition was timely, and remanded for further proceedings. See Tennison v. Henry, 2000 WL 1844301 (9th Cir.(Cal.)). On remand, the District Court issued an Order To Show Cause. On March 28, 2001, Respondent filed an answer. On March 29, 2001, the Court appointed counsel for Petitioner.

On May 25, 2001, Petitioner filed a motion to stay his habeas Petition in order to allow him to return to State court to exhaust two additional claims: 1) violation of his due process rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) based on the failure of the prosecution to disclose information about the actual killer; and 2) violation of his right to effective assistance of counsel based on the failure of his trial counsel to have the killer's confession admitted on a motion for a new trial. Concurrently, Petitioner filed this Motion For Discovery, seeking discovery on underlying both his pending claims and his unexhausted claims. The District Court granted Petitioner's motion for stay in an order filed August 15, 2001. Petitioner's Motion For Discovery was referred for disposition to the undersigned United States Magistrate Judge.

### B. Facts

On August 19, 1989, Roderick Shannon was cornered by a group of people and shot to death in the parking lot of a Super Fair Market in San Francisco. Tennison and another individual, Anton Goff, were charged with the murder and tried together in a trial that commenced on September 17, 1990. Both defendants were convicted of first-degree murder and conspiracy to commit murder on October 3, 1990. RT 1151–1154.

Sometime prior to the trial, Inspector Prentice Sanders interviewed an individual who may have been an eyewitness to the murder, Chante Smith. See Transcript of July 24, 1992 interview of Chante Smith by Prentice Sanders at 42, Exh. H to Declaration of Elliot R. Peters In Support of Motions To Stay Proceedings And For Discovery ("Peters Decl."). In this interview, Smith stated that she had "heard" that Lovinsky Ricard had murdered Shannon and that the police were charging the wrong people. Id. According to Defendant, this pretrial interview was not disclosed to defense counsel prior to trial. Motion at 3.

On November 7, 1990, a month after Tennison's conviction, Officers Michael Lewis and Nevil Gittens interviewed Lovinsky Ricard and videotaped the interview. See

11/7/90 Statement of Lovinsky Ricard, Exh. I to Peters Decl. Ricard confessed to Shannon's murder. *Id.* at 6. The Officers asked whether either Tennison or Goff was present at the scene of the crime, and Ricard responded that they were not. *Id.* at 12. Defense counsel was not informed of the interview and did not receive a copy of the tape until May 21, 1991, the second-to-last day of the hearing on Tennison's motion for a new trial.

Following Petitioner's conviction and prior to the new trial motion hearing, Tennison's trial counsel, Jeff Adachi, of the Office of the Public Defender, conducted his own investigation of Shannon's murder, pursuing leads provided by Tennison. *See* Transcript of New Trial Motion Hearing, RT 37. He learned of two possible eyewitnesses, Luther Blue and his girlfriend, Chauntey White.[1] *Id.* According to Adachi, numerous sources told him that Chauntey White was present at the time of the shooting and could exonerate Tennison but that she was afraid to testify. RT 37, 62. There is no indication from the new trial motion hearing transcript that either Adachi or Petitioner's new counsel, LeRue Grim, was aware of the interview of Chante Smith by Inspector Sanders, discussed above, at the time of the hearing on the new trial motion. With respect to Luther Blue, Tennison testified at the new trial motion hearing that Blue admitted to him after Tennison was convicted that he had been at the scene when Roderick was killed and that Blue agreed to testify that Tennison was not involved in the murder. RT 149. However, when Adachi subsequently questioned Blue, Blue denied making these statements to Tennison. RT 149, 122–123.

Tennison also gave Adachi the telephone number of a possible suspect in the murder of Shannon Roderick, Lovinsky Ricard. RT 26. Tennison testified at the hearing on his new trial motion that he learned of Ricard's involvement in the murder within a week of his conviction and that soon thereafter, Ricard admitted in a telephone conversation with Tennison that he had shot Roderick Shannon. RT 136–141. Tennison told Adachi about Ricard's confession, RT 30, and Adachi called Ricard. RT 34. Initially, Ricard denied knowing anything about the murder of Roderick. RT 53. Subsequently, he agreed to meet with Adachi, but failed to show up at the meeting. RT 147. Eventually, however, he apparently admitted to the murder in a conversation with Adachi. RT 145–146. Adachi made a videotape on February 20, 1991 of an individual who confessed to the murder of Roderick Shannon. RT 94. In the videotape, the individual who confessed did not identify himself and his face was obscured by a hood. RT 164, 218.[2]

On May 17, 1991, Tennison's attorney sought to introduce into evidence the videotape made by Jeff Adachi. On the same day, in the afternoon, the prosecutor, ADA Butterworth, told the court that he had learned for the first time of the interview with Ricard conducted by Officers Lewis and Gittens. On May 21, 1991, Tennison's counsel was provided with a copy of a tape of that interview for the first time. The court viewed both tapes at the hearing, and Tennison testified that the voice of the individual who confessed on the tape made by Adachi belonged to Lovinsky Ricard. RT 177. However, the court concluded that both videotapes were inadmissible. 6/20/91 hearing, RT 121. The court denied Tennison's motion for a new trial.

On July 24, 1992, Chante Smith agreed to be interviewed by police investigators. *See* Exh. H to Peters Declaration (interview transcript). In the 1992 interview, Smith stated that she and Luther Blue were at the scene of the killing and that neither Goff nor Tennison was present. Exh. H to Peters Declaration at 60. In a declaration dated February 15, 2001, Smith stated that she did not come forward as a witness when she was

---

1. The record indicates that "Chauntey White" is the same person as is referred to by the parties in the briefing for this motion as "Chante Smith."

2. On February 21, 1991, Adachi learned that the Office of the Public Defender had a conflict and withdrew as Tennison's counsel RT 95. On March 1, 1991, Adachi was replaced by LeRue Grim, who represented Tennison at the new trial motion hearing, which began on May 15, 1991. Prior to the hearing, Adachi gave the videotape that he had made on February 20 to LeRue Grim.

initially interviewed by the police because she was afraid to testify. Exh. N to Peters Decl. (2/15/01 Declaration). Luther Blue stated in a sworn declaration dated November 6, 2000, that he saw the killing and that neither Tennison nor Goff was present. Exh. O to Peters Declaration.

### C. Petitioner's Motion For Discovery

Petitioner seeks discovery that he argues relates to both the pending claims asserted in the Petition and the unexhausted claims which Petitioner plans to assert in California state court. In particular, Petitioner requests permission to depose the following individuals:

1. Officer Michael Lewis;
2. Officer Nevil Gittens;
3. ADA George Butterworth;
4. Inspector Prentice Sanders;
5. Inspector Napoleon Hendrix;
6. Lovinsky Ricard;
7. Chante Smith; and
8. Luther Blue.

In addition, Petitioner requests production of files on the Tennison case from the San Francisco Police Department and the San Francisco District Attorney's Office.

## II. ANALYSIS

### A. Discovery On Both Exhausted And Unexhausted Claims

■ Petitioner asserts that he may pursue discovery on unexhausted claims as well as his exhausted claims under *Calderon v. U.S. District Court for the Northern District of California (Thomas)*, 144 F.3d 618, 619–620 (9th Cir.1998). This Court agrees.

In *Thomas*, the petitioner filed a habeas petition in federal court that included both exhausted and unexhausted claims. *Id.* at 619. The District Court held that the petitioner could not proceed with a habeas petition that included unexhausted claims. *Id.* Instead of dismissing the petition, however, the court issued a withdrawal-and-abeyance order, which allowed the petitioner to delete his unexhausted claims from his federal habeas petition and stayed his exhausted claims, while he pursued the unexhausted

claims in state court. *Id.* at 619. The District Court directed the petitioner to file an amended petition incorporating the newly exhausted claims after litigating them in state court. *Id.* In addition, the District Court granted petitioner's discovery request, which solely pertained to an unexhausted claim. *Id.* at 620.

The Ninth Circuit affirmed the District Court's decision. *Id.* at 622. In reaching its decision, the court explained that discovery requests should not be granted when the District Court does not have a valid habeas petition before it or when a habeas petition includes both exhausted and unexhausted claims. *Id.* at 621. In contrast, where there is a valid habeas petition before the court containing only exhausted claims, the court may grant a request for discovery—even on the unexhausted claims—for good cause. *Id.*

### B. Good Cause Requirement

Petitioner asserts that there is good cause for allowing discovery he seeks in his motion because: 1) the discovery sought is relevant to his exhausted claims; and 2) he has demonstrated a need to preserve testimony under Fed.R.Civ.P. 27(a) as to the unexhausted claims. Under Rule 6(a) of the Federal Rules Governing Section 2254 cases, "a party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Rule 6(a) gives the District Court wide discretion in determining whether there is good cause to permit discovery in a habeas proceeding. *See* Advisory Committee Notes to Rule 6(a) (stating that the rule "contains very little specificity as to what types and methods of discovery should be made available to the parties in a habeas proceeding ..." and that "[t]he purpose of this rule is to get some experience in how discovery would work in actual practice by letting District Court judges fashion their own rules in the context of individual cases").

■ Where a habeas petition containing only exhausted claims is before the court, there is "good cause" to permit discovery where "specific allegations before the court

**440**

show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 299, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Further, where it is anticipated that the petition will be amended to include as-of-yet unexhausted claims, it may be appropriate to allow discovery on these claims as well where the court finds that there is a need to perpetuate testimony. *Thomas*, 144 F.3d at 621–622. In *Thomas*, the court drew on Fed. R.Civ.P. 27(a), governing the permissibility of conducting discovery on cognizable claims that a party cannot yet bring but expects to bring in the future, to determine whether or not there was good cause to permit discovery on unexhausted claims. *Id.*

Here, in contrast to *Thomas*, much of the discovery sought by Petitioner relates to his exhausted claims. To the extent that Petitioner also seeks discovery that relates to his unexhausted claims, however, the Court looks to Rule 27(a) for guidance in determining whether or not there is good cause to allow that discovery.

■ Rule 27(a) allows parties to obtain discovery before litigation has commenced where the Court is "satisfied that the perpetuation of testimony may prevent a failure or delay of justice." Fed.R.Civ.P. 27(a)(3). A party seeking discovery under Rule 27(a) must show:

1, that the petitioner expects to be a party to an action cognizable in a court of the United States but is presently unable to bring it or cause it to be brought, 2, the subject matter of the expected action and the petitioner's interest therein, 3, the facts which the petitioner desires to establish by the proposed testimony and the reasons for desiring to perpetuate it, 4, the names or a description of the persons the petitioner expects will be adverse parties and their addresses so far as known, and 5, the names and addresses of the persons to be examined and the substance of the testimony which the petitioner expects to elicit from each, and shall ask for an order authorizing the petitioner to take the depositions of the persons to be examined

named in the petition, for the purpose of perpetuating their testimony.

Fed.R.Civ.P. 27(a)(1). Courts have held that the requirements of Rule 27(a) have been met where an individual seeking discovery: 1) shows he is acting in "anticipation of litigation in federal court"; 2) "adequately explain[s]" the substance of the testimony he seeks to obtain; and 3) presents evidence that there is a "significant risk" that the evidence will be lost if it is not perpetuated. *Thomas*, 144 F.3d 618, 621–622. The scope of the inquiry that may be permitted under Rule 27 is narrower than that which is permissible under the more general rule governing discovery, Fed.R.Civ.P. 26(b). *Nevada v. O'Leary*, 63 F.3d 932, 936 (9th Cir.1995). In particular, Rule 27 may be used only to perpetuate important "known testimony" that might otherwise be lost. *Id.*

■ In order to demonstrate that there is significant risk of loss, "[i]t is advisable, though not necessary, to show particular circumstances indicating a concrete danger of loss." *State of Nevada v. O'Leary*, 151 F.R.D. 655, 657 (D.Nev.1993), *aff'd* 63 F.3d 932 (9th Cir.1995). As the District Court explained in *O'Leary*, "[c]ourts have held that the granting of a petition for preservation of testimony is aimed principally at the uncertainties appended to the passage of time and ... a showing that the petitioner is presently unable to bring the expected action or cause it to be brought is sufficient showing of the danger of the loss of evidence by delay." *Id.* (citing to *Petition of Ernst*, 2 F.R.D. 447, 451 (S.D.Cal.1942)); *see also Hall v. Stout*, 1871, 4 Del.Ch. 269, 274 (stating that "[b]ills to perpetuate testimony proceed, not on the ground of imminent risk of loss before a pending suit can reach a trial, but on the ground that the party not being in a situation to bring his title to a trial, his evidence may be lost through lapse of time, a risk affecting all evidence, irrespective of any particular condition of a witness") (cited with approval in the Advisory Committee Note to Fed.R.Civ.P. 27).

Although the passage of time may under some circumstances be sufficient to establish the need to perpetuate testimony, courts are most likely to permit discovery under Rule

27(a) where some special consideration makes the need to perpetuate testimony particularly urgent. Among the factors that courts have found to be persuasive in justifying the need to perpetuate testimony are: 1) advanced age or infirmity of witness; 2) the possibility that the witness will not be willing to testify if discovery is delayed; and 3) the uniqueness of the information at issue. *See, e.g., Penn Mutual Life Insurance Company v. United States of America and the Internal Revenue Service,* 68 F.3d 1371, 1375 (D.C.Cir.1995) (permitting deposition under Rule 27(a) on the basis that witness was 80 years old and therefore, that there was significant risk that testimony would be lost); *Texaco v. Borda,* 383 F.2d 607, 609 (3d Cir. 1967) (permitting deposition under Rule 27 on the basis that the witness was 71 years old); *Thomas* (permitting discovery on unexhausted claim where facts showed that witness might not be willing to cooperate in the future); *In re Bay County Middlegrounds Landfill Site,* 171 F.3d 1044, 1047 (6th Cir. 1999) (holding that material sought under Rule 27(a) need only be "distinctly useful" to a finder of fact but noting that "if material were absolutely unique and relevant to the potential suit, it would clearly meet the standard of Rule 27(a)").

The Court addresses below whether good cause exists with respect to the specific discovery sought by Petitioner and the scope of discovery that is justified by such good cause.

### C. *Discovery Sought By Petitioner*

#### 1. *Depositions of Officers Lewis and Gittens*

■ As discussed above, Officers Lewis and Gittens conducted an interview of Lovinsky Ricard on November 7, 1990, in which Ricard confessed to the crime for which Petitioner was convicted and stated that Petitioner was not at the scene. Petitioner seeks to depose Officers Lewis and Gittens on the following specific issues:

1. The circumstances surrounding the November 7, 1990 Ricard confession;

2. Who else knew about the confession, what they knew, and when they knew it;

3. The actions taken by Lewis and Gittens concerning the confession;

4. Any follow-up investigation undertaken by the San Francisco Police Department following the Ricard confession;

5. The circumstances surrounding Lewis's meeting with ADA Butterworth in the courthouse cafeteria on May 17, 1991;

6. Lewis's knowledge about the state's failure to provide defense counsel with any information regarding the recorded November 7, 1990 interview of Ricard prior to May 21, 1991; and

7. Gittens' knowledge about the state's failure to provide defense counsel with any information regarding the recorded November 7, 1990 interview of Ricard prior to May 21, 1991.

Motion at 7–8.

The Court finds that most of the issues listed above are relevant to Petitioner's claims that he was denied his constitutional right to due process by: 1) the failure of the state to provide a new trial given the evidence of Petitioner's actual innocence, and 2) the District Attorney's failure to remedy the "gross miscarriage of justice" of Petitioner's conviction in the face of strong evidence of Petitioner's actual innocence. The Court further finds that development of these issues through discovery could demonstrate that Petitioner is entitled to relief on this claim.[3] On this basis, the Court finds good cause for permitting the depositions of Officers Lewis and Gittens on the following issues:

1. The circumstances surrounding the November 7, 1990 Ricard confession.

2. The identities of those persons who knew about the confession, what they knew about the confession, and when they knew it.

3. The actions taken by Lewis and Gittens regarding the following subject

---

**3.** Because the Court finds good cause to permit the requested depositions of Officers Lewis and Gittens based on Petitioner's pending claims, the Court need not reach whether such discovery may also be justified pursuant to Rule 27(a) based on Petitioner's unexhausted claims.

matters that arose during the confession:

(a) Whether or not Ricard committed the murder; and

(b) Whether or not Petitioner was present at the scene when the murder occurred.

4. In the follow-up investigation undertaken by the San Francisco Police Department as a result of the Ricard confession with respect to the following subject matters:

(a) Whether or not Ricard committed the murder; and

(b) Whether or not Petitioner was present at the scene when the murder occurred.

5. The circumstances surrounding Lewis's meeting with ADA Butterworth in the courthouse cafeteria on May 17, 1991.

6. Lewis's and Gittens' knowledge of the State's failure to provide defense counsel with any information regarding the recorded November 7, 1990 interview of Ricard prior to May 21, 1991.

### 2. *Depositions of Inspectors Sanders and Hendrix*

■ Inspectors Sanders and Hendrix investigated the murder of Shannon Roderick. As part of that investigation, Inspector Sanders apparently conducted an interview of Chante Smith before the trial, of which Petitioner's defense counsel was not informed. In that interview, Smith alluded to information that Petitioner was not guilty and that Ricard was guilty. Inspectors Sanders and Hendrix also conducted a post-trial interview of Chante Smith in which she alluded to the first interview. In addition, Inspector Hendrix was involved in contacts with witness Masina Fauolo, one of the key witnesses at the trial.

Petitioner requests leave to depose Inspector Sanders on the following issues:

1. The circumstances surrounding the pre-trial interview of Chante Smith;

2. Any follow-up investigation or other actions taken by the San Francisco Police Department or District Attor-

ney's Office following the pre-trial Smith interview, including any information concerning the authorities' failure to provide the information to the defense;

3. The circumstances surrounding the post-trial Smith interview;

4. Any follow-up investigation or other actions taken by the San Francisco Police Department or District Attorney's Office following the post-trial Smith interview, including any information concerning the authorities' failure to provide the information to the defense;

5. What Sanders learned about Ricard and what he did with that information;

6. Sanders' knowledge of Officers Lewis's and Gittens' interview with Ricard;

7. Any actions taken by the San Francisco Police Department or District Attorneys' Office taken with regard to the Ricard interview.

Petitioner requests leave to depose Inspector Hendrix on the same issues, as well as the following additional issue: the circumstances surrounding the pre-trial interviews of and conversations with Pauline Maluina and Masina Fauolo, including the circumstances under which he told Malina on the morning of her direct testimony at Tennison's trial that she had incorrectly identified Tennison's car as having been at the murder scene in previous police interviews.

The Court finds that there is good cause to allow limited depositions of both Inspector Sanders and Inspector Hendrix because Petitioner seeks information that is likely to shed considerable light on his exhausted due process claims, both of which will depend upon the strength of Petitioner's evidence of actual innocence. *See Swan v. Peterson*, 6 F.3d 1373, 1384 (holding that "[n]ewly discovered evidence is a ground for federal habeas corpus relief only when it bears on the constitutionality of an applicant's conviction, . . . and would probably produce an acquittal"). This evidence is also relevant to the unexhausted *Brady* claims. Moreover, even if the discovery sought by Petitioner were relevant *only* to his unexhausted claims, limited discovery would be appropriate under Rule 27 based on

the age of the witnesses, combined with the long passage of time. According to Petitioner, Inspector Hendrix is approximately 71 and Inspector Sanders is approximately 63. The Court therefore permits Petitioner to depose these individuals on the following subject matter:

**Inspector Sanders**

1. The circumstances surrounding the pre-trial Smith interview;

2. Any follow-up investigation or other actions taken by the San Francisco Police Department or District Attorney's Office based on or regarding: 1) the pretrial Smith interview; and 2) failure to provide the statement to the defense;

3. Who knew about the pre-trial Smith interview, what they knew, and when;

4. The circumstances surrounding the post-trial interview of Chante Smith;

5. Any follow-up investigation or other actions taken by the San Francisco Police Department or District Attorney's Office based on or regarding the post-trial Smith interview.

**Inspector Hendrix**

All of the issues listed as to Inspector Sanders, as well as the following additional issue: the circumstances surrounding the pre-trial interviews of and conversations with Pauline Maluina and Masina Fauolo, including the circumstances under which he told Masina on the morning of her direct testimony at Tennison's trial that she had incorrectly identified Tennison's car as having been at the murder scene in previous police interviews.

### 3. *Depositions of Lovinsky Ricard, Luther Blue, and Chante Smith*

■ Petitioner seeks to depose Lovinsky Ricard, Luther Blue, and Chante Smith on the basis that each may be able to offer important testimony to establish Tennison's actual innocence. This evidence is likely to be important for Tennison's Due Process claim based on the trial court's refusal to grant a new trial in the face of new evidence showing actual innocence, a claim on which

Tennison has exhausted his state court remedies. *See Swan v. Peterson,* 6 F.3d 1373, 1384 (holding that "[n]ewly discovered evidence is a ground for federal habeas corpus relief only when it bears on the constitutionality of an applicant's conviction, ... and would probably produce an acquittal"). The discovery sought may also be relevant to Tennison's (unexhausted) *Brady* claim to the extent that it may lead to information that establishes that the exculpatory material that was withheld from the defense was material to Tennison's conviction. *See Brady v. State of Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

In light of the fact that the discovery sought by Tennison may show that he is entitled to relief on both his exhausted and unexhausted claims, and given the reluctance of all three of these witnesses to testify in the past, the Court finds good cause for permitting discovery on the following issues:

**Lovinsky Ricard**

1. The circumstances surrounding the shooting of Roderick Shannon;

2. The circumstances surrounding Ricard's confession to the shooting of Roderick Shannon;

3. All contacts Ricard had with the San Francisco Police Department or the San Francisco District Attorney's Office regarding the shooting of Roderick Shannon.

**Chante Smith**

1. Smith's pre-trial statements to Inspector Sanders and the circumstances surrounding those statements;

2. Smith's July 1992 statement to Inspectors Sanders and Hendrix, and the circumstances surrounding that statement;

3. The circumstances surrounding the shooting of Roderick Shannon.

**444**

**Luther Blue**

1. The circumstances surrounding the shooting of Roderick Shannon;

2. All contacts Blue had with the San Francisco Police Department or the San Francisco District Attorney's Office regarding the shooting of Roderick Shannon.

### 4. Deposition of ADA Butterworth

■ Tennison also seeks to depose ADA Butterworth concerning the circumstances under which he learned of Ricard's confession and concerning the pre-trial interview of Chante Smith. The Court does not find good cause to permit such discovery at this time. First, the discovery would be cumulative. ADA Butterworth has already provided information in open court, at the motion for new trial hearing, about the circumstances under which he learned of the Ricard confession. Further, Petitioner will have an opportunity to depose Inspector Sanders on the question of whether and when he told ADA Butterworth about the pre-trial interview of Chante Smith and the Ricard confession. Moreover, attorney-client privilege and work product issues are likely to arise in a deposition of ADA Butterworth. Accordingly, depositions of the investigators and the witnesses to the homicide will yield information on the same subjects to which ADA Butterworth would testify, but without the prospect of intruding on potentially protected matters. The Court declines to permit his deposition at this time, but may reconsider the matter on a further showing of good cause after the ordered discovery is completed.

### 5. Request for Document Production

Petitioner also seeks an order requiring document production. The Court finds good cause to permit the document production sought by Petitioner with the following limitation: Petitioner's requests must be limited to documents relating to: 1) whether or not Ricard committed the murder of Roderick Shannon; or 2) whether or not Petitioner was present at the scene of and/or participated in the murder.

IT IS SO ORDERED.