John TENNISON, Plaintiff,

v.

**CITY & COUNTY OF SAN FRANCISCO, et al., Defendants.**

**No. C–04–0574 CW (EMC).**

United States District Court, N.D. California.

March 23, 2005.

Daniel Purcell, Aimee Lynnette Ezzell, Keker & Van Nest, LLP, Elliot R. Peters, Ethan A. Balogh, San Francisco, CA, for Plaintiff.

**ORDER GRANTING DEFENDANT HENDRIX'S MOTION TO COMPEL; GRANTING DEFENDANT SANDERS' REQUEST FOR JUDICIAL NOTICE; AND GRANTING IN PART AND DENYING IN PART DEFENDANT SANDERS' MOTION TO COMPEL (Docket Nos. 76, 77, 80)**

CHEN, United States Magistrate Judge.

Plaintiff John Tennison filed suit against various defendants, including the City and County of San Francisco ("City"), the San Francisco Police Department ("SFPD"), two police inspectors (in their official and individual capacities), and an ADA (George Butterworth), alleging that Defendants violated his civil rights during the criminal investigation and prosecution of a murder case in which Mr. Tennison was the criminal defendant. More specifically, Mr. Tennison claims that Defendants (1) withheld exculpatory and impeachment evidence that likely would have led to his acquittal and (2) relied extensively on perjured testimony while ignoring and failing to investigate other exculpatory evidence. Previously, Judge Wilken granted Mr. Tennison habeas relief based on the finding that Defendants had suppressed exculpatory evidence.

Pending before the Court are two motions to compel filed by the individual officers, Napoleon Hendrix and Prentice Earl Sanders. The officers seek to compel Mr. Tennison to provide further responses to contention interrogatories and to produce two categories of documents. Having considered the parties' briefs and accompanying submissions, the oral argument of counsel, and post-argument supplemental briefing, the Court hereby GRANTS Mr. Hendrix's motion to compel and GRANTS in part and DENIES in part Mr. Sanders' motion to compel.

## I. DISCUSSION

### A. Mr. Hendrix's Motion to Compel

In his motion to compel, Mr. Hendrix argues that Mr. Tennison should be compelled

to provide full and complete answers to Interrogatories Nos. 2, 3, and 5.

### 1. *Interrogatory No. 2*

■ In Interrogatory No. 2, Mr. Hendrix asked Mr. Tennison to state all facts supporting his denial that (1) the individual defendants were not aware of any exculpatory evidence prior to Mr. Tennison's conviction and that (2) Mr. Tennison was aware or reasonably should have been aware of exculpatory evidence prior to his conviction. In response to the interrogatory, Mr. Tennison made various objections and then stated that

> [his] pleadings in *Tennison v. Ivalee Henry*, No. 98–3842[, 203 F.R.D. 435] (N.D.Cal.), the proceedings and discovery therein, and Judge Claudia Wilken's Order granting habeas relief documents possible facts responsive to this interrogatory. Even though these documents are in the public record or otherwise available to Hendrix, Tennison will as a courtesy make them available to [Hendrix] in response to this Interrogatory, along with any and all other responsive, non-privileged documents within Tennison's custody and control, from which Hendrix can obtain such information as readily as can Tennison in response to this Interrogatory.

Wong Decl., Ex. G (responses to interrogatories).

Mr. Hendrix's motion to compel Mr. Tennison to provide a full and complete response to Interrogatory No. 2 is granted. The interrogatory does not require Mr. Tennison to disclose any privileged information, and it is not being asked early on in the pretrial process. (Fact discovery is set to close on April 18, 2005.). Thus, the disfavored status that normally applies to early contention interrogatories before discovery is undertaken (*see Nelson v. Capital One Bank*, 206 F.R.D. 499, 501 (N.D.Cal.2001); *In re Convergent Techs.*, 108 F.R.D. 328, 332–40 (N.D.Cal.1985)) is inapposite here. At this juncture, discovery is nearly complete, and hence Plaintiff is in a position to provide meaningful answers. Furthermore, the interrogatory will advance the litigation as it will pin down Mr. Tennison's position as the parties prepare for trial regarding the exact state of his (and his attorney's) knowledge (a fact Mr. Tennison concedes is relevant to this suit as discussed below), and the knowledge of the individual defendants regarding exculpatory evidence prior to his conviction. Although a great deal of information obviously is in the hands of Mr. Hendrix, the information about Mr. Tennison's knowledge about the exculpatory information is not. Finally, the interrogatory is not unduly burdensome as Mr. Tennison presumptively is in the final stages of organizing and preparing his case for presentation of evidence at trial. Thus, embodying this information into an interrogatory response is feasible.

To be sure, although this is not a case in which Defendants are in the dark about Plaintiff's position given the extensive civil and criminal litigation history of this case, overall the factors set forth in *Nelson* favor permitting the contention interrogatory. Mr. Hendrix's motion to compel a response is granted.

### 2. *Interrogatories Nos. 3 and 5*

■ In Interrogatories Nos. 3 and 5, Mr. Hendrix asked Mr. Tennison to state all facts supporting his claim for compensatory and general damages. In response to each interrogatory, Mr. Tennison made several objections and then provided the same answer above. He also stated that "his damages stem from 13–1/2 years of wrongful incarceration."

Mr. Hendrix's motion to compel full and complete responses to these interrogatories is granted. Mr. Hendrix should not have to guess whether, *e.g.*, Mr. Tennison has suffered emotional distress because of the incarceration, whether he sought treatment for such distress, and so forth.

### B. *Mr. Sanders' Motion to Compel*

In his motion to compel, Mr. Sanders argues that Mr. Tennison should be compelled to provide full and complete answers to Interrogatories Nos. 1, 3, 5, 7, 9, 11, 13, and 15 and that he should be compelled to produce two categories of responsive documents.

### 1. *Interrogatory No. 1*

In Interrogatory No. 1, Mr. Sanders asked Mr. Tennison to state all facts supporting his contention that the individual officers are liable to him for violations of § 1983. This interrogatory essentially seeks the same information as Mr. Hendrix's Interrogatory No. 2. The above analysis therefore applies. The motion is granted.

### 2. *Interrogatory No. 15*

In Interrogatory No. 15, Mr. Sanders asked Mr. Tennison to state all facts supporting his contention that the individual officers knowingly withheld, ignored, and failed to investigate exculpatory information. Again, this interrogatory essentially seeks the same information as Mr. Hendrix's Interrogatory No. 2. The motion is granted for the above reasons.

### 3. *Interrogatories Nos. 3, 5, 7, 9, 11, and 13*

In Interrogatories Nos. 3, 5, 7, 9, 11, and 13, Mr. Sanders asked Mr. Tennison to state all facts supporting various contentions, such as the contention that the individual officers suppressed an audiotape confession by Lovinsky Ricard, suppressed the identity and statements of Chante Smith, and a videotaped interview with Luther Blue. If anything, these interrogatories are more focused, asking about specific allegations of wrongdoing by the individual officers. Thus, the burden/benefit analysis weighs even more heavily in Mr. Sanders' favor. Mr. Sanders' motion to compel with respect to these interrogatories is granted.

### 4. *Attorney Documents*

■ Mr. Sanders has moved to compel not only with respect to the above interrogatories but also with respect to document requests. One of the categories of documents sought by Mr. Sanders is documents over which Mr. Tennison has asserted the work product privilege.

In his privilege log, Mr. Tennison asserted the work product privilege over a number of documents authored by his criminal defense attorneys at the time of his criminal prosecution in 1990. *See* Wong Decl., Ex. M (Mr. Tennison's privilege log). Most of the documents at issue were authored by Jeff Adachi, who was trial counsel for Mr. Tennison. Mr. Sanders argues that the documents listed on the privilege log should be produced for three reasons: (1) because the work product doctrine does not apply to criminal defense records sought in a subsequent civil action; (2) because Mr. Tennison waived the work product privilege when he moved for a new trial; and (3) because, even if the work product privilege is applicable, Mr. Sanders has a compelling need for the information.

### a. *Work Product Privilege in Subsequent Civil Action*

Mr. Sanders cites *Doubleday v. Ruh,* 149 F.R.D. 601 (C.D.Cal.1993), to support the argument that the work product doctrine does not apply to criminal defense records sought in a subsequent civil action.

In *Doubleday,* the plaintiff was the subject of a criminal prosecution by the Sacramento County District Attorney's Office for assault and battery on a peace officer. *See id.* at 604. The plaintiff was found not guilty. *See id.* Subsequently, she filed suit against various officers of the Sacramento County Sheriff's Department as well as Sacramento County under § 1983. *See id.* at 604–05. During discovery, the plaintiff issued subpoenas to three deputy district attorneys and to the custodian of records for the District Attorney's Office. *See id.* at 604. Regarding the latter subpoena, the plaintiff sought the complete prosecutorial file from the criminal case against her. *See id.* The defendants argued that the documents were protected by, among other things, the work product privilege. *See id.*

The court began its analysis by noting that, in *FTC v. Grolier, Inc.,* 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), the Supreme Court held that the work product doctrine applied to a subsequent litigation even though the prior litigation had ended six years earlier. *See id.* at 605. However, "one condition of later protection is that the protected materials must have been 'prepared by or for a party to the subsequent litigation.' " *Id.* (quoting *Grolier,* 462 U.S. at

25, 103 S.Ct. 2209). That condition was not met in *Doubleday.*

The County was *not* a party to the previous criminal case, and none of the individual defendants in this civil action were parties in that criminal case. The plaintiff in the prior litigation was "the People of the State of California." It is true that the District Attorney of the County of Sacramento usually brings these cases, but the Office of the Attorney General may unilaterally decide to bring a case against a criminal defendant, and may do so where the district attorney's office has decided not to prosecute. Therefore, it cannot be held that the District Attorney or the County of Sacramento is synonymous with the "People."

*Id.* at 605–06 (emphasis added).

As Mr. Tennison argues, *Doubleday* is not applicable to the instant case because here the documents from the prior litigation *were* prepared by or for a party to the subsequent litigation. *See* Opp'n at 9 ("Adachi's work product was prepared on behalf of Tennison, and it is Tennison who is asserting the protection now."). Mr. Sanders does nothing to address this point. *See* Mot. at 11 (arguing that *Doubleday* applies to the instant case even though "the documents at issue here were generated by the defense in the prior criminal action, not the prosecution"). Thus, unlike *Doubleday,* the work product privilege applies under *Grolier.*

■ Although there is *dicta* in *Doubleday* suggesting that work product in a prior *criminal* action may not be privileged in a subsequent *civil* action, the Court is not persuaded that the court intended to apply a *per se* rule to all such cases. The result in *Doubleday* was driven in part by the fact that the discovery sought was that of the district attorney who "is not an 'attorney' who represents a 'client' as such. He is a public officer. . . ." *Doubleday,* 149 F.R.D. at 606. Given the public responsibilities of the district attorney, as well as the public's general interest in disclosure of government information, the rules regarding privacy and privilege normally applicable to documents of private parties do not necessarily apply to the government. There is no necessary sym-

metry between which the prior litigation files of a public agency such as the district attorney's and those of private defense counsel. That the former may not be privileged in a subsequent civil suit does not necessarily mean that the latter is not.

There are in fact substantial policy reasons why the files of a criminal defense lawyer should be more closely safeguarded than that of the District Attorney. A criminal defendant has a constitutional right to counsel as well as a privilege against self-incrimination, rights and privileges that do not apply to the government prosecutor. These factors counsel particular caution before breaching the private and protected nature of these files.

Tellingly, Mr. Sanders has not and cannot cite to any cases in which the work product privilege of a *criminal defendant* was deemed inapplicable in a subsequent civil litigation in which the criminal defendant was the civil rights plaintiff. The cases addressing the issue of subsequent litigation, like *Doubleday,* involve the applicability of the work product privilege of the *prosecution. See Ostrowski v. Holem,* No. 02 C 50281, 2002 WL 31956039, at *4, 2003 U.S. Dist. LEXIS 794, at *10 (N.D.Ill. Jan. 21, 2002) ("[M]any courts have found the work-product privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery by a litigant in a related and subsequent civil lawsuit.").

The Court therefore rejects Mr. Sanders' first argument that the work product privilege of Mr. Tennison and his counsel is inapplicable to the instant civil case.

b. *Express Waiver*

■ Mr. Sanders argues next that, even if the work product privilege does apply to the instant case, it has been waived by Mr. Tennison. Mr. Sanders asks the Court to take judicial notice of a hearing held in state court on May 15, 1991. Because Mr. Tennison did not object to that request, and because the request falls under the ambit of Federal Rule of Evidence 201, the Court shall take notice of that hearing. During that hearing on his motion for a new trial, Mr. Tennison expressly waived the attorney-client privilege so that

Mr. Adachi could testify about conversations between Mr. Tennison and himself. *See* Tr. at 22. Thus, Mr. Adachi was able to testify about conversations in which Mr. Tennison said that Mr. Ricard was involved in the murder. *See id.* at 48, 75. Mr. Adachi also testified about other information that he learned after Mr. Tennison was convicted— *i.e.,* that someone else was responsible for the murder. *See id.* at 36 (discussing interviews and other investigation conducted).

In response, Mr. Tennison argues that his waiver of the attorney-client privilege cannot be equated with the work product privilege. To be sure, courts have repeatedly held that the two privileges are distinct. *See, e.g., United States v. Nobles,* 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) ("The work-product doctrine is distinct from and broader than the attorney-client privilege."); *United States v. Adlman,* 134 F.3d 1194, 1200 (2d Cir.1998) ("The attorney-client privilege and the work product rule serve different objectives. The fact that a document does not come within the attorney-client privilege should not result in the deprivation of the protection accorded by Rule 26(b)(3)."); *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 646 (5th Cir.1992) (noting that "the attorney work product doctrine fosters interests different from the attorney-client privilege"); *National Union Fire Ins. Co. v. Murray Sheet Metal Co.,* 967 F.2d 980, 984 n. 4 (4th Cir.1992) ("The work product immunity, which is frequently referred to as a 'work product privilege,' is not to be confused with the attorney-client privilege which arises from different circumstances and is subject to different protections and waivers."). However, that two distinct privileges are involved does not resolve the question of whether the work product privilege was waived when Mr. Adachi testified about the

investigation he conducted after Mr. Tennison was convicted. His testimony disclosed not only attorney-client communication but work product as well. Moreover, the Ninth Circuit has found in another context that waiver of attorney-client "applies equally to the work product privilege, a complementary rule that protects many of the same interests." *Bittaker v. Woodford,* 331 F.3d 715, 722 n. 6 (9th Cir.2003) (en banc).

In light of Mr. Adachi's testimony, the Court concludes that there has been a waiver of the work product privilege, although the waiver is limited to (1) fact work product, *see In re Martin Marietta Corp.,* 856 F.2d 619, 625 (4th Cir.1988) (holding that a subject matter waiver of fact work product did not " 'appl[y] with equal vigor to opinion work product' "),[1] as to (2) the investigation conducted after Mr. Tennison's conviction. *See United States v. Nobles,* 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (holding that the defendant, "by electing to present the investigator as a witness, waived the [work-product] privilege with respect to matters covered in his testimony").

Although there has been a waiver with respect to the investigation conducted *after* Mr. Tennison was convicted, most of the documents in Mr. Tennison's privilege log seem to be dated *prior* to the conviction. *See* Wong Decl., Ex. M (Mr. Tennison's privilege log). There is some basis for arguing that there has been a waiver of fact work product regarding the earlier investigation since Mr. Adachi testified that he might have gotten information about another suspect for the murder not only after the conviction but also before. *See* Tr. at 75. However, there is another reason for finding a waiver of the pre-conviction documents.

---

1. The court explained that subject matter waiver should not extend to opinion work product for two reasons.

   First, and most generally, opinion work product to be accorded great protection by the courts. While certainly actual disclosure of pure mental impressions may be deemed waiver, and while conceivably there may be indirect waiver in extreme circumstances, we think generally such work product is not subject to discovery. . . .

   Secondly, the underlying rationale for the doctrine of subject matter waiver has little application in the context of a pure expression of legal theory or legal opinion. . . . There is relatively little danger that a litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial of a case so as to distort the factfinding process. *Martin Marietta,* 856 F.2d at 626.

### c. *Implied Waiver*

In supplemental briefing, Mr. Sanders argues in effect for an implied waiver. He contends that in bringing this suit, Mr. Tennison has put evidence as to his and his attorney's knowledge at issue. In determining whether an implied waiver may be found, the Ninth Circuit employs a three-pronged test.

First, the court considers whether the party is asserting the "privilege as the result of some affirmative act, such as filing suit." *Home Indem. Co. v. Lane Powell Moss & Miller,* 43 F.3d 1322, 1326 (9th Cir.1995) (citing *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975)). Second, the court examines whether "through this affirmative act, the asserting party puts the privileged information at issue." *Id.* Finally, the court evaluates whether "allowing the privilege would deny the opposing party access to information vital to its defense." *Id.* *United States v. Amlani,* 169 F.3d 1189, 1195 (9th Cir.1999).

In the case at bar, Mr. Tennison has brought suit asserting Defendants violated his constitutional rights by suppressing exculpatory evidence and relying on perjured testimony. To succeed, Mr. Tennison must prove not only these facts, but the lack of knowledge of such evidence on the part of his attorney and himself. *See California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984) ("Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."); *United States v. Dupuy,* 760 F.2d 1492, 1502, n. 5 (9th Cir.1985) (stating no suppression when prosecution did not disclose the witnesses' statements but defense knew of witnesses' identities; noting that "any allegation of suppression boils down to an assessment of what the State knows at trial in comparison to the knowl-edge held by the defense"); *United States v. Grossman,* 843 F.2d 78, 85 (2d Cir.1988) (stating that prosecution's failure to disclose potentially exculpatory evidence does not violate due process "where a defendant knew of or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available to defendant from another source"); *United States v. Gaggi,* 811 F.2d 47, 59 (2d Cir.1987) ("[N]o *Brady* violation occurs if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence."). Indeed, Mr. Tennison does not dispute that, "if he or Adachi knew about the suppressed evidence before trial, or could have obtained comparable evidence by reasonably available means, that would be relevant to whether defendants' suppression caused his wrongful conviction." Pl.'s Supp. Br. at 2. Mr. Tennison's and his counsel's knowledge is relevant to both the existence of a substantive constitutional violation as well as causation of damages in this civil action. Thus, the first two prongs of the test of implied waiver in *Amlani* are met.

As to the third prong, Mr. Adachi's documents, to the extent they disclose knowledge of evidence suppressed or falsity of the testimony procured by Defendants herein, are vital to the defense given their materiality to the substantive constitutional claims asserted by Mr. Tennison and to the question of causation. Although Mr. Tennison argues they are not vital because Mr. Adachi may be deposed on these matters, the contention lacks merit. While a deposition may be useful and informative, documentary evidence is often necessary to assist in the examination of a witness, either to show inconsistencies or to refresh the witness' recollection. Discovery under the Federal Rules of Civil Procedure affords litigants an array of tools which are often complementary; documents and depositions are two such complementary tools. *See* Fed.R.Civ.P. 30(b) (production of documents at deposition). Furthermore, the Court notes that by acceding to the deposition of Mr. Adachi on these matters, Mr. Tennison in effect concedes that an intrusion into the attorney-client and work product

privilege is permissible and reasonable under the circumstances of this case. To additionally permit discovery of closely related documents, narrowly tailored as discussed below, effects an incremental intrusion into those privileges.

On the other hand, the scope of the waiver is not as broad as Mr. Sanders would have it. In view of the particularly sensitive nature of the information here—criminal defense counsel files—the waiver must be narrowly tailored so that it is only as broad as is necessary to assure fairness to Defendants. The waiver extends only to fact work product, not opinion work product. There is no need to explore Mr. Adachi's mental impressions and opinions. What counsel knew or perhaps should have known is measured objectively. All that is relevant is what Mr. Adachi knew or was told, not his subjective opinions. Only documents that show facts bearing directly on what Mr. Adachi and Mr. Tennison knew or should have known about the evidence allegedly suppressed or falsity of perjured testimony need be produced.

The Court is mindful of the sensitive nature of the attorney-client relations and litigation files of criminal defense counsel noted above. However, the waiver here extends only to exculpatory evidence which Mr. Tennison and/or his counsel may have known about; it does not encompass the more delicate information that would be involved were Defendants to seek, *e.g.*, inculpatory statements or evidence. The waiver found herein does not implicate the policy and constitutional concerns discussed above.

Nor is there a likelihood that communications between a criminal defendant and his attorney will be chilled as a result of the limited waiver found under the circumstances of this lawsuit. *Cf. Koppers Co., Inc. v. Aetna Casualty & Surety Co.*, 847 F.Supp. 360, 363 (W.D.Pa.1994) (examining whether likelihood of chilling the type of ordinarily-privileged connection is outweighed by the unfairness to the seeking party if privilege is found), *vacated without opinion*, 40 F.3d 1240 (3d Cir.1994). The chances of a lawsuit such as this case are remote. And it would be brought only if the criminal defendant's conviction were overturned and the criminal

defendant did not face the risk of re-prosecution.

### d. *Compelling Need*

■ Finally, Mr. Sanders argues that, even if there is a work product privilege in the instant case, that privilege should be overcome because he has a compelling need for the documents identified in the privilege log. *See* Fed.R.Civ.P. 26(b)(3) (noting that work product may be discovered "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the part is unable without undue hardship to obtain the substantial equivalent of the materials by other means"). Given the Court's finding of waiver, it need not address this argument. To the extent Mr. Sanders is dissatisfied with the limited scope of waiver found herein, the Court notes that a compelling need ordinarily will not justify the production of opinion work product, which "receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir.2003); *see also Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992) ("A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product."). Although the Ninth Circuit did say in *Holmgren* that "opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling," *id.* (emphasis in original), Mr. Adachi's mental impressions (as opposed to his knowledge) are not at issue in the instant case for the reasons discussed above.

In any event, the Court notes there is an obvious parallel between the compelling need test for overriding the work product privilege and the requirement under the implied waiver test that the information be relevant and vital to the defense. The Court's holding above applies with equal force to Mr. Sanders' compelling need argument.

e. *Summary*

Accordingly, the Court concludes that the work product privilege is applicable but that there has been a limited waiver of the privilege. The waiver extends only to fact work product and not opinion work product and pertains only to documents reflecting Mr. Tennison's or his attorney's knowledge of the evidence and testimony at issue in this suit. The parties are instructed to meet and confer to discuss which documents listed on the privilege log are relevant to Mr. Tennison's and Mr. Adachi's knowledge of exculpatory evidence allegedly suppressed or false testimony obtained and which constitute fact work product and not opinion work product. If a document contains both fact and opinion work product, then the opinion work product shall be redacted.

5. *Documents Related to Mr. Tennison's Incarceration Records*

Finally, Mr. Sanders seeks from Mr. Tennison his incarceration records which he subpoenaed from the California Department of Corrections, the California Board of Prison Terms, and the Mule Creek State Prison. The Court orders that Mr. Tennison produce all documents as required by Rule 26(a)(1) for initial disclosures and that he produce all documents related to the four categories agreed upon by the parties as relevant to this suit. *See* Mot. at 13–14; Opp'n at 12. If any incarceration records are withheld, then Mr. Tennison should provide to Mr. Sanders a log akin to a privilege log so that Mr. Sanders will have an understanding of the kinds of documents being withheld and their general subject matter.

## II. *CONCLUSION*

For the foregoing reasons, the Court grants Mr. Hendrix's motion to compel and grants in part and denies in part Mr. Sanders' motion to compel.

This order disposes of Docket Nos. 76, 77, and 80.

IT IS SO ORDERED.